and Mark Brnovich Good morning. May it please the court. I'm Assistant Attorney General Robert Walsh appearing on behalf of Charles L. Ryan respondents and cross appellees. Judge Wake granted habeas relief on two counts and denied relief on the others. I'm here obviously to talk about the two that I lost. And when I'm talking about the constitutionality of Arizona's child molestation statutes, that was one ground for habeas relief. It was procedurally defaulted based upon ineffective assistance of trial counsel. And relief was also granted on Joel Thompson trial counsel's ineffectiveness for not raising that claim. Now as a result of the posture of these issues, I'm going to focus on the ineffective assistance of trial counsel claim. Because obviously that would require reversing the grant of habeas relief on that particular claim. And it would also negate the cause of prejudice for the procedurally defaulted constitutional challenge to the statute. Now let me tell you what I mean when I start talking about why it was wrong. I'm going to be talking primarily about the deficient performance problem. Now Judge Wake began his analysis with the merits of the claim. His understanding was that there was no state court ruling on deficient performance and he thought that since the merits went to prejudice and to the merits of the claim that he should get past the procedural default, he determined the statute was unconstitutional. Once he did that, he said, look, this is an obvious federal constitutional claim that clearly was dispositive for Mr. May. It also was amenable to vindication in federal court. And he basically said, okay, this looks like deficient performance. Now let me look at Joel Thompson. What strategic reason did he have for not raising the claim? Of course, you've read my briefs, you know I take issue with this. But he said, well, he didn't have a reason. He was ignorant of the law. And I can't divine any strategic reason for him not to do so because it wouldn't have taken any time and it wouldn't have conflicted with any strategy. Now, the problem with starting the analysis with the constitutionality of the statute is that it has some oversights. Number one, when you do that, you're forgetting that you're deciding this issue in 2017 and the trial attorney made his omission in 2007 and you're not looking at the landscape that was in existence at the time, which was that in Arizona, there were no cases construing the statute or holding it unconstitutional. In fact, there's only one case that construed the predecessor version of the statute and held the constitutional. And of course, we know that you're not supposed to be influenced by the distorting effects of hindsight. But I think probably the most fatal problem with this particular analysis is, let's just assume for the sake of argument right at this point, that the statute is indeed unconstitutional. Primo versus Moore dealt with an analogous situation. There, the defense attorney did not raise a suppression motion that would have been granted. Now, the Supreme Court didn't allow... It was actually reversing this court on habeas review. It didn't conflate the merits of the claim with deficient performance. They asked a very important question, one that I don't think Judge Wake adequately answered, which is, would another reasonable attorney in Joel Thompson's place have likewise decided not to raise this claim? And the district court didn't do that analysis. So what types of things would have precluded an attorney in Arizona from doing it? I want to say this. I mean, it's not like we could ignore something that Judge Wake did here on appeal. He ignored what May's own PCR counsel, Joanne Falgo, had said in private correspondence with Tracy Westerhausen, who represented Mr. May on appeal. She wrote and said, you know, there is a potential challenge to this statute, but I only give it a 25% to 30% chance of success because Arizona courts are very hostile towards burden-shifting claims. And my fear is, she wrote, that if you take a look at this statute, they're going to analogize lack of sexual motivation to justification. And of course, that implicates the Martin v. Ohio negate the elements test. And if, of course, we know that a element, of course, has to be proven by the state, but an affirmative defense doesn't have to be. It could be put on the defendant. That might be a reason that the argument might not succeed, but is it a reason why it would have been harmful to try? Well, you see, the thing is, it's a very good question. What I cited were cases saying that you need to have more than just a conceivable chance. Like I cited Engel v. Isaac, where the Supreme Court said, you know, the Sixth Amendment doesn't guarantee that an attorney is going to recognize and raise every claim. And I cited cases like United States v. Chalamet from the Tenth Circuit that say that you don't have a duty to raise viable issues. And I even went further with precedent that said, well, what happens if you have a claim that would have succeeded in hindsight and you didn't raise it? That actually makes me leap ahead, Your Honor, to the point that this wasn't a claim that was obvious. And even if it were obvious, I gave you many, many cases in my brief where you might have an issue where there's a conflict within your jurisdiction or outside your jurisdiction, and an attorney's not deficient for not raising it. You even have cases which I was personally shocked by, where you have in Systrunk v. Vaughan, you have the Supreme Court denial, denial is absurd, and the Supreme Court justices are saying, no, this is bad law. We've got to pass reports, and that's not enough. We even have where cert is granted on an issue. You don't raise the claim. It's still not deficient performance. I was going to switch to the hung jury issue, so I don't know if you had something more on that. Let me just follow up with the, getting back to the last reasoned decision. I believe the last reasoned decision on the ineffective assistance of counsel here is the PCR trial court in terms of the ineffective assistance of counsel for failing to challenge the Constitution. And there, the PCR trial court looked, specifically mentioned prejudice, but then at the end of that opinion indicated there was no evidence that performance of either trial or appellate counsel fell below prevailing objective standards. It addressed deficiency as well. Now, is it your position that we're reviewing deficiency de novo as the district court indicated under ROMP and those statutes, or is this catch-all in the PCR court's opinion enough to say that we are, we're reviewing the deficiency prong as well under AEDPA? Okay. The, if you look at the minute entry order, I believe that is an adjudication on the deficiency prong because it does subsume all of the claims and under Richter, that is enough for there to be at pedeference. But my duty to candor to the court requires me to tell you that you actually owe at pedeference only with respect to the ineffective assistance of trial counsel's substantive claim. Your decision in Visconti versus Martel says when it comes down to de novo review, you obviously have, you know, when you're looking at cause and prejudice, you have de novo review. But I'm not concerned about that because Richter and Strickland and other cases like that say that even without AEDPA deference, you still have to give great deference to the trial attorney's decisions. And so it was in that, for that very reason that you see that I talk quite a bit about all the reasons that would have deterred counsel from wanting to raise the claim. In other words, in order to find Joel Thompson ineffective, you'd have to say that no reasonable attorney in Arizona would have raised this claim. And what's very startling here is that Judge Wake failed to take into account and give proper weight to the fact that there was no evidence that these claims were being adjudicated in Arizona courts by trial counsel or appellate counsel. During the PCR proceeding, they didn't offer any motions by defense counsel prior to 2007 raising this claim, nor were there any briefs that were presented that could have done the same thing. And so what we have here is we have Michael Picoretta, who I professionally respect. And I cited a case for the proposition from this court that was later overruled by the Supreme Court on different grounds, that the Sixth Amendment doesn't require best counsel, but just competent counsel. And Mr. Picoretta might have raised this issue, but the reality of it is, as we look at the practice, why are there no published opinions in Arizona between Sanderson in 1995 and Holly Won in 2015? It's because it wasn't being raised. If every other court but Arizona, you know, places the burden of intent upon the government, this is the only state in the United States which goes the other way? That is true according to Justice Bales. Actually, I take that back. Justice Bales made a statement of that nature, as did Judge Wake. He believes that Hawaii might also do the same thing. All right. So the fact that- The law has now changed though, right? It's not this way anymore? Yes, the legislature did change that. And I do want to make a point about it because I know the it's some sort of a belated recognition that the statute was unconstitutional. We have a federal rule of evidence that basically says that subsequent remedial measures aren't invisible to prove fault. I mean, I believe the statute's constitutional, but if I were sitting on the legislature and May versus Ryan comes out, I'd be saying, you know what? I think the statute's correct, but let's not endanger all these convictions in case we lose. Let's change the law. So that's not really- Can I ask you about the mistrial issue? Yeah, go ahead, please. So it seems that there's an argument that's been made that the fact that there would be a transcript of the trial in a second trial shows that somehow it was reasonable to not risk the second trial. Can you explain to me what about the transcript in this trial would have been problematic for the defense? Because it seems to me when I read it, like it's maybe favorable for the defense. It seems like there were several things that went kind of well for the defense in this trial. So I'm a little confused by that. Well, I think that what the whole point is, is Joel Thompson didn't want to go along with the mistrial. He was happy with this particular jury deciding the case because truthfully, they were having a difficult time deciding it. And I think he believed that there was going to be an acquittal. But when it comes down to it, I mean- But you'd have all the testimony about the kids not remembering things and- Right. Another kid had already dropped out. So if you take the mistrial, why aren't you more likely to have an acquittal in the next trial? Or else maybe there isn't even a next trial because the government gives up because this is not going well. Right. The question though is what would a reasonable attorney do, not what a hypothetical different attorney would have done. And the reason is that, look, I was a prosecutor. I did drug enforcement. If I have the defendant's testimony, I'm going to be, okay, this is what he testified to. I'm going to call additional witnesses to impeach that person. I'm going to make sure I preempt their testimony with my victim's testimony. All the weaknesses that I've pointed out- Can you point me to any weakness? I mean, the way that he testified, the defendant testified, is there anything that you think opened the door for something way better in the second trial? He did lie when he was asked by the police officer about how many kids that he knew. Obviously that's something that could be brought up to the second child. I think that we also have to take a look at some other factors, Your Honor, though. I mean, for instance, one of the most devastating counts, I think, that the rulings that have been rendered in this case was that Nicholas's count had been severed out. That was the only count where we actually had physical touching. He pinched the penis of a three-year-old boy at a daycare center. That's what it was. The state could have gone back and said, would you please reconsider that ruling in light of the way the prior trial went? We also had jury instructions that were not exactly favorable to the state, that the state might have said, you know what, Judge, you told the jury that they can't consider evidence of the other defendants to corroborate the testimony of the other. And Rule 404C is propensity evidence, and the judge basically denied the severance motion on the idea that it would be cross-admissible for propensity purposes, but then gave a jury instruction that said you can't do that. So there are a lot of reasons. I mean, I'm not just stuck with Mr. Thompson's rationale, but I also can offer additional explanations. Now, I do have only seven minutes left. I want to ask you a few questions. Go ahead. I'm a trial judge, so maybe this really is something which focuses me more so perhaps than if I were just, not just, if I was fortunate enough to just be a court of appeals judge. But we get mistrials declared, and we discharge jurors. And in this particular case, what troubles me is what is the responsibility of a lawyer, of a professional lawyer, on when you have a mistrial that's declared, the jury, a new trial date was set, and the jury was sent on its way. Now, I understand there's some issue about whether they came back in five minutes or ten minutes and said, we want to give it a try again. But don't you think that we're dealing with an issue of exploring whether there was jury contamination? As I read the law, in many jurisdictions, but not in Arizona, the declaration of a mistrial is the end of the case. But apparently, Arizona has a nuanced approach, and they adopt the contamination issue. But how do you know whether there's contamination? That's an extrinsic factor, perhaps, once the mistrial is declared, unless you question the with the El Chapo trial for a new trial, because allegedly, the jurors were reading about the case in the newspaper every day. That's an extrinsic aspect under the rules of evidence. And I think the judge has the obligation to explore whether or not that was the case. I have to do this many times when I try cases in Brooklyn. And for sure, that if I declared a mistrial, I'd want to know whether the jury was contaminated. Here we have some evidence that there could be contamination that happened to incidentally creep into the record because there were these affidavits that were filed. And one of the jurors said that everybody was on their cell phone. Now, it could be two minutes, it could be five minutes, it could be 30 seconds. But if I were involved in the situation, I would for sure want to know whether they spoke on the cell phone, who they spoke to, what their loved ones may have said. Maybe they said, you know, go back and hang the skyhock. Who knows? But that issue was not explored. Don't you think that counsel had a professional obligation to ask the court to poll the jurors and examine whether or not there was extrinsic contamination? No, I don't believe so. Why not? Well, the reason is that, Your Honor, you don't even have that obligation. You would have to have that obligation if there was any that actual exposure to contamination occurred. How do you know that unless you question the jurors? Well, in this circumstance, you have only five minutes from the time the jurors... So what? Well, because they're still... Like, I am here with you. I'm... You're Judge Stevens instead of Judge Block. I'm talking to you about this particular new trial date. The defendants here, the prosecutors here, the jury room could be very well just a closet where they go in and they can only come out through the courtroom, and he would be in the best position to see whether or not anyone's coming out and going out the door. But even using your concern about the five minutes, you know, so let's assume that they were all talking on the telephone. How much could they have possibly said? They go back to their rooms... But that's exactly why I would question the jurors. What did they read about in the newspaper? Did it affect your judgment? Did you discuss this with anybody? When you got on the phone, did somebody tell you, hang the sky, how can you walk away without convicting? I don't know, but it seems to me that's the very purpose of the obligation of the lawyer, let alone the judge, to say, we're going to pull the jurors judge. You have to find that there's a mistrial that's been declared here. Your Honor, what I would do is I would refer you to a precedent that I cited in the brief that says that judges don't have a sua sponte duty to do it, and if they don't have a sua sponte duty to do it, the defense in their other cases will talk about that. Are we reviewing that under AEDPA, or is that, are we reviewing a de novo? That would be under AEDPA, because I believe that claim was exhausted. And so the last reason to make a decision on that said what? That was the PCR appeal court? The Court of Appeals adopted the trial court's ruling. That's not true. I thought the Court of Appeals said the opposite of what the trial court said. The trial court had said no deficient performance, and the appeal court said, even assuming it was deficient, there's no prejudice. That doesn't seem to be adopting, does it? You're talking about the issue about the mistrial? Yes. You know what? Let me sit down and look at the order, and then I'll be able to give you a better answer. I have about two minutes and 51 seconds. Thank you. Good morning, Your Honors. Erica Dubno for the appellee and cross-appellant Stephen May, who is in the courthouse today. With me also is Robert McWhorter and Mike Kimmerer. The question is whether in five minutes there could be no difference with jurors speaking with other people. I mean, the juror did say every one of us was on our cell phone, and certainly that could create some kind of question as to what was going on, why they wanted to resume deliberations. Do you agree that we're reviewing this under AEDPA? Which specific aspect of it? I'm sorry. So there's an ineffective assistance of counsel claim, failure to object before allowing jurors to resume deliberation after a mistrial. I assume that that's the claim that you're arguing, or are you arguing a different claim? No, we're arguing that claim. That claim. And so the last recent decision on that was the PCR appeal court. Is that right? Yeah, the PCR. It's exactly what Judge Friedland said. The PCR court had made a determination on that relating to one aspect of it, and the court of appeals sort of went the other way. And said there was no prejudice. Yes, correct. The appeals court, if I understand it, just ruled that there was no structural or fundamental error that did not even address the contamination issue whatsoever, right? Yeah, exactly. What they were relying on was a claim that this had been barred by a state procedural rule, was allegedly well-established. I mean, it clearly wasn't that well-established if the PCR court didn't know about it and held the full evidentiary hearing on the juror misconduct. Excuse me, I'm losing it. So on direct appeal, he raised the claim, and on direct appeal, the court of appeals said there wasn't any error in allowing jurors to resume deliberations. That's correct. Is that correct? I didn't see any argument about contamination or taint. In fact, in one of the briefs, the defendant, Mr. May, says this isn't about jury taint. There are two different issues here. The mistrial issue was raised on direct appeal. The taint issue was raised in the PCR. Okay, can you direct me to where? Because I didn't see anything on taint. All I saw was an error for failure to object. Your Honor, I'll have to look at the record, and if I'm given an opportunity afterwards, I certainly will be able to hopefully find it, and if not, I can submit a 20HA letter afterwards. Because the appellate court, the PCR appellate court said, A, can't show prejudice because they rejected the underlying claim of error on appeal. That was the PCR appeals court decision. I think that's the last reason decision, which is before us. So if you think there's some other decision before us, can you point me to it? There's no other decision in front of you. I think what you were starting to say is that what the appellate PCR court discussed as to prejudice was whether there was the structural error analysis that the direct appeal had involved, and I took it to be your argument that you're starting to make any way that Strickland and the structural error argument are different, so this is either contrary to or an unreasonable application of Strickland, the way that the court looked at prejudice? That's correct, Your Honor. And why is that? I don't understand that argument. The court said there was no error in allowing the jurors to resume deliberation. We take an odd ad hoc common sense approach, cited Crumley, cited some Washington State opinion. But in this situation, the Strickland error there, obviously, is in counsel's failure to review it. So I'm not sure I'm completely understanding the court's question. What did the state appellate PCR court do wrong in its analysis of prejudice? How did it not apply Strickland correctly? Oh, well, it did not apply it for a variety of reasons. The first thing is, the court did review the issues, but didn't apply Strickland for the understanding that here, counsel didn't investigate why it was that the jurors came back, why it was that the jurors had an oral communication with the bailiff. The jurors were doing a variety of things. They were unsworn when they came back to deliberate. And at no point did the defense counsel ever investigate any of that. I was trying to get at a different issue. Do you think that the state appellate PCR court applied the right legal standard of prejudice when it was looking at whether there was prejudice for this error? Did it apply the legal test of Strickland? I believe that the court erred in its determination. So the test for prejudice under Strickland is a reasonable probability that for counsel's errors, the result of the proceeding would have been different. And so they said, it's not because there was no error here. We've rejected the claim of error. So it wouldn't have been different. So why was that a mistaken application of Strickland? That was predicated upon the fact that they found that this was not structurally deficient. The issue of contamination was never raised at all, from what I understand. During the direct appeal. That's correct, Your Honor. And where was it raised? And, oh, you're going to get back to us because I didn't see anything about contamination raised in his briefing. So I must have missed it. You'll have to put it out to me. Just to be clear, I just want to clarify. When you're talking about prejudice, the question relates to, and Taint, the question is whether or not the jurors- Taint is a different issue, right? So in other words, he would have to make a claim that the trial counsel erred in not asking the court to determine whether the jury had been contaminated by outside influences. I didn't see that claim raised to the PCR court. So it may, there was a massive amount of documents, so I may have missed it, but I didn't see it. I believe, Your Honor, it was part of the ineffectiveness claim in general, but I will take a look. I don't want to get bogged down on that because there are a number of other issues here, but certainly we would be able to provide supplemental information to the court in that regard. Can I ask you another question about this mistrial issue, though? So why wouldn't it have been a reasonable strategic decision to stick with a jury that seemed to have at least some people who wanted to acquit? Certainly, Your Honor. As introduced, or as addressed by Mr. Picoretta, as a defense attorney, when you get a mistrial, you run, no matter what situation you have. They had indicated that there were jurors who were hung, but ultimately they came back, and there was nothing to support the fact that those jurors that they were going to ultimately convince all of the other jurors to convict, I mean to acquit, I apologize. Certainly that there's a situation there, there's no benefit at all to continuing with the trial. Significantly, Mr. Thompson was not receiving any additional funds for if the case got retried. So that's important. As you indicated before, there was absolutely nothing in the record that would have been helpful to the prosecution or harmful to the defense. There was simply nothing there, and there's no reason. When you say that a defense counsel would take a mistrial and run, is the idea there that the state might give up and not even do the second trial? Or what's the rationale behind that that you think is so obvious that any lawyer would do it? As someone who's had a lot of cases in the past, I can tell you based on our own experience, but on just historically, the case, sometimes they don't want child witnesses, especially where they see that they don't actually have any recollection of it, to come forward. You have the issue of just sort of time. Things happened a while ago. There are all different reasons as to why you wouldn't want to retry an issue, retry a case. Do we have any cases that suggest that, or you're appealing just to a common sense that it fell below professional standards at the time? Are there any other cases where the court attempts to reinstate the jury and there's a failure to object? Because that was the situation that this attorney was faced with, right? It was, the court asked, are there any objections to the jury resuming its deliberations? This is clearly a Strickland issue, because what counsel did, and Your Honor, I do not have any cases specifically on that one issue because it's such a unique thing. You don't usually have jurors sui sponte coming back and saying they want to continue deliberating. Although it's unique, it still falls below professional norms, in your view? Absolutely. Based on common sense. Not just common sense, Your Honor. I mean, you're sitting, he did not conduct any investigation. He did not ask why the jurors were coming back, what had changed their mind. There was an oral communication between the foreman of the jury and the bailiff, even though throughout the entire proceeding, everything had been done by notes. We have no idea what happened there. And to allow that to happen without giving any kind of investigation at all seems obviously unreasonable and ineffective assistance of counsel there. But if Your Honor, if I may address some of the other issues that we have in the case, I would hope actually the court would not even need to reach the mistrial issue, because quite honestly, the issues that were decided in Judge Wake's decision are absolutely, you know, should be affirmed by this court. One of the most cherished rules, I apologize, Your Honor, you look like you're about to ask a question. No, no, just breathe. Okay, fair enough. One of the most cherished rules in this nation is that people are presumed innocent, and that the government bears the obligation and responsibility of proving every essential element beyond a reasonable doubt. Here, the state of Arizona creates a presumption that anyone is a child molester, and that they have the burden of proving that they are not. In this situation, the only thing that makes touching a child's genitals illicit or wrong is having some kind of mental intent. The government does not seem to dispute that at this point. There was no argument made that this statute should be constitutional, because as recognized by Judge Block, it's not. The issue is whether the attorney was ineffective in not raising this argument, not whether the statute is unconstitutional or not. Because in order to get to that issue, we have to find cause and prejudice for not raising it below. On that regard, two things. Before we get to cause and prejudice, I just want to point out, in our 28-J letter that we recently provided to the court, in Reed v. Ross, the U.S. Supreme Court said that where there's an issue that's novel but on a specific basis, that that automatically establishes cause. But turning to the cause issue, the actual ineffective assistance of counsel, Judge Wake was correct when he found that cause and prejudice had indeed been established here. At the outset, the court had asked whether it should be reviewed for edpedeference or de novo. Judge Wake found that under either standard, it was ineffective assistance of counsel. What the attorney here did was he did not challenge something that was fundamentally obvious to anybody there. Patterson sort of goes the other way, right? Patterson upheld a statute that had a mental state as a defense. So was there a case squarely on point that the attorney here should have recognized? I think the Mulaney case. And there's nothing in Patterson that undoes what Mulaney says. And what's important to note... Except that it went a different way, right? It went a different way first. But what happened... I apologize. Go ahead. What happened in Patterson was that the court, the statute that was addressed there, was completely different from the statute here. And the statute in Mulaney... I'm sorry, in Patterson, all that was happening was you were decreasing from a murder to manslaughter. And it was a shifting of the burden on that one aspect here. Here, there is absolutely nothing wrong. There's no malum and say with intentionally... Let me interrupt now that I finished my heavy breathing. Fair enough, Your Honor. I think the Arizona Supreme Court, subsequent to this trial, has affirmed the constitutionality of that statute, still says that that statute that we have today is lawful, that the burden of intent will rest with the defense. So we have a case subsequent to this trial where the Arizona Supreme Court agrees with that, I think, right? I believe you're referring... I'm a big fan of that decision, okay? And I know that it's sort of an outlier decision. But if the Arizona court believed that, based upon Arizona law or whatever its analysis was, that it was okay, then how can you hold the lawyer accountable for ineffective assistance of counsel? I would love to do that personally, but I don't see how I can get through Strickland in this issue. Okay, several issues. Number one, the Hawley 2 decision came about after the case. And so, in terms of determination of ineffective assistance of counsel, you don't look at what happened now. You look at what the status of the law was then. The second thing is... I'm looking at that, but I think that the Arizona court also looked at the status of the Hawley 2 decision. And so, I think that's a good thing to look at, but I don't see how you can go way back when, as well, they did not. Your Honor, that's... It was good for them, wasn't it? Good for the lawyer to say, you know, I can't really challenge this. In Hawley 2, which was recently decided, the actual constitutional issue was not really addressed by the majority. What happened was, it was a split decision. And actually, what happened was Chief Judge Bales, he found that this law was unconstitutional. And what he is saying there is that it can be... sexual intent can be established through an affirmative defense. The court did not make a finding, and it certainly did not make a finding under the federal due process clause. So, I don't believe in any way that Hawley 2 is dispositive of this. And I think Judge Bales' very well-reasoned decision as to why this law is unconstitutional is much more supportive. Again, you know, I just have a hard time finding that the lawyer, the trial lawyer, is ineffective in not raising the constitutionality of that. Your Honor, had counsel actually done his homework, what happened was, at the trial, the judge said, you have an opportunity to provide supplement... to provide briefing to me on these issues here. And Joel Thompson didn't. He didn't provide any briefing at all. The state did, but Joel Thompson didn't. And had Joel Thompson actually investigated the issues, he would have seen that there was case law from Arizona that was related to this. There was the Jensen decision from 1987, which said that instructional errors that put burdens on defendants violate due process. All of the case law leading up to the Simpson case, which was decided after Stephen May's trial, actually support the due process issue and the burden. So, the law that was in effect at the time that counsel should have been providing this briefing to the court, that law would have supported the due process claim, and he didn't file anything on it. He just dropped the ball on that. And I think that that does support the ineffective assistance claim. Judge Wake's decision is very well-reasoned, and he recognizes that counsel was ineffective. And with all due deference, the state says, well, you know, this was... we may well have an unconstitutional statute. Stephen May has been sentenced to prison for 75 years under a statute that it doesn't seem like anyone is disputing its constitutionality and how it was applied to him. And that's a very dangerous thing. If we're going to allow that to stand, because there may be questions... Isn't the current Arizona position that it is constitutional? Is there a case that says it's not? I'm sorry, is there a case that says... As it was then written, it's not constitutional? I believe that... Other than Judge Wake's? Judge Wake's decision, the dissent in Holly 2 and the Holly 1 case were sort of addressing it. Well, Holly 1 was overturned, and the dissent, obviously, as I well know, is just a dissent. There's no question about it, and I'm not disputing that there is. But Judge Wake's decision and the law that was in existence at the time of Stephen May's trial, the Simpson case came afterwards. All of the case law up until that point certainly supports that this was ineffective assistance of counseling, Your Honor. If there are no further questions, I rely on our brief. Thank you. Apparently not. I have 2 minutes and 48 seconds to cover a lot of ground. I do wanna talk a little bit with the jury continuing to deliberate issue. To be honest with you, you threw me a pitch that made me buckle on my knees when you threw that curveball about that. I saw that baseball game yesterday, so I got the idea. Well, I wound up looking at this. I represented the state on direct appeal, and the issue that I thought was most interesting, we actually had oral argument on, was when Judge Stevens declared a mistrial, did the jurors go out and mingle and everything else and get it where we got the ruling under State v. Crumley that we have the functional discharge issue. That was the ruling that the Court of Appeals and the trial court was talking about with respect to juror contamination. I won that issue on direct appeal because there was no evidence to prove that there was any sort of contamination, that the jurors had gone outside to the public. So that's the reason why the Court of Appeals and their memo decision said it was precluded. But let me just do this. Judge, let's just assume for the sake of argument that there is deficient performance. That's not what the Court of Appeals said here. They said there's no prejudice because we've already rejected the jury contamination. I have an issue with the basis for that rejection. Go ahead. What else are we going to say? But the thing is, when we look at Strickland prejudice, Bible v. Ryan and many other cases say that you can't rely upon speculation that there is some sort of prejudice. In other words, first of all, remember that this juror's conversation took place after the Court of Appeals ever rendered its decision on direct appeal. It's one juror who's saying, we were on the telephones leaving, but we have no idea what the substance of those conversations are. And there's also the possibility that she's- On the Strickland, it's a fair probability or possibility that the prejudice would have been established by the judge. I mean, here the issue is not whether or not the jury would have convicted him or not convicted him. It's what would the Again, that's speculation. I think that if there was an objection, that is, there's under Strickland fair probability that he would have said, I'm not going to change that. I mean, it's an oddball case. Any other case like this where there's been a declaration of a mistrial and the jury was allowed to continue to deliberate after that? Any other case? No, I don't know of any off the top of my head. Can you advise that the opposing counsel wasn't able to advise whether this issue about whether there was a taint or contamination of the jury was raised to the PCR court? I didn't, to be honest with you, I didn't think so. I mean, I'm trying to, what I understood the state court proceeding to be about was the judge to the sua sponte addressed this issue. And it came up in the federal habeas and that's where I got the King versus Bowersox case. I actually signed two different cases in my appeal on this issue. To be honest with you, I'm not sure that this was ever squarely addressed because I'm not sure it was even raised. I have about seven seconds. I'd like to ask you a question about the prejudice analysis of the state PCR appellate court on this mistrial issue. So as I understand it, what the state appellate court talked about was the direct appeal question about structural error under which the standard is an error of dimensions that it cannot be said it is possible for defendant to have had a fair trial. So I thought the PCR court said because we didn't find structural error, there's no prejudice. But Strickland tells us to look at whether the result would have been different or might have been different. And that seems like a very different question than the question that the state PCR appellate court asked. So I don't understand how that was an application of Strickland that is not contrary to Strickland or some kind of problem with either application of interpretation of Strickland. To be honest, I'm not really sure the claim was raised squarely in the PCR proceeding. I think that the trial court rejected the claim on the basis that the failure to object to the continuation of deliberations was wrapped up in that mistrial. And that issue was a proper for the court to allow the jurors to resume deliberation after the mistrial. That was the problem. We never objected to that. I never asked for a contamination hearing in any event. Right. But I mean, I think that the court of appeals rejection of the claim, it's basically the application of Strickland that if the claim has already been rejected on its merits, then you can't have rejected under a structural error question that was raised on direct appeal, not on an ineffectiveness of the failure to object. Or I mean, maybe it was sort of in it. Somehow it ended up a structural error thing on direct appeal for which the legal inquiry is a different one than Strickland. But there was absolutely no proof. The reason why they didn't find structural error is because they didn't find any proof that there was any contamination. So, and to be honest, there still is no proof of contamination. The only thing we have here. That's circular reasoning. How can you find where there's proof unless you inquire about the issue? But the thing is, when we take a look, let's say, for instance, you didn't call. You're making a factual assessment here that there was no contamination. I think that's what really to do that. Well, I'll use a different context. You didn't call a forensic expert regarding ballistics or DNA in this case. That's an IAC claim. The defendant doesn't offer an affidavit from the witness to say what he would have said. If that situation occurs, Judge Block, I could give you a letter with so many cases that stand for the proposition that you don't speculate as to what the missing evidence would have said. I see this as a simpler case that, you know, I think there should have been an inquiry. And I think that the failure of the lawyer to make that request is clearly, clearly. But there's no prejudice because you'd have to speculate as to what it would have been. You would have to speculate. How do you even get to that if you don't know what the contamination hearing is going to produce? What if during the hearing, the juror who submitted an affidavit, we just happen to have that, maybe in a different case, we wouldn't even have that information. But nonetheless, the jurors said everybody got on their cell phones. So what if the judge, you know, inquires and the jurors say, yeah, we spoke to our husbands and they said, come on, this guy's guilty. Get out of here. You don't know what would happen. How can you say that there's no likelihood that the judge would not have adhered to the mistrial determination, which was already made and the new trial set for four months later? Well, Your Honor, again, that all is based upon speculation. It's a tough cup of tea here, isn't it? Well, no, it's actually, it's a lot harder. I mean, first of all, for your assumption, your assumption is that within five minutes, the jurors can say, oh, we just let a child molester off. Oh, how can you possibly do that? We don't even know that happens. There's some case law that I read that said it could be two minutes, it could be 10 minutes. You know, there may be no contamination if the jury was out for three days, but there may be contamination if they're out for two minutes. How do we know? Anyway, I've made my argument. So it's a structural error, basically. No, no, it's not. It depends on what we're talking about. In the structural error, we already know that, you know, there's a functional approach and there's no Supreme Court precedent that this claim ever being raised, Judge Block, was did Judge Sherry Stevens have a sua sponte duty to do it? She didn't. I would refer you to the cases I cite, not just in my brief, but also my answer. And again, this claim would rely upon speculation as to what would have been said. I mean, let's assume for the sake of argument, you didn't call an expert to show DNA. Well, you didn't identify the expert. You didn't say what they would have shown. And we can't speculate as to what the test would have been. That's the same type of issue here. All right. I'm sorry. I don't think I have any more time. You are well over your time. So we appreciate your arguments. Thank you very much. Both parties. And the case of Stephen Edward May versus Ryan Ann Brnovich is submitted.
judges: Ikuta, Friedland, Block